Good morning. I'm Bruce Rose. I'm on behalf of the defendants at law. And I'd like to have 15 minutes opening and five minutes for rebuttal. Very well. Good morning, Justices. Dirk Price for the plaintiff at L.E. Giannakopulos. And 15 minutes should be sufficient. Very well. Thank you. Now remember this microphone is for recording purposes, not for amplification. So if you want to be heard, speak up. Thank you, Judge. Thank you. Mr. Rose. Yes. Okay. You're on. Thank you. The defendants presented uncontested evidence in the form of affidavits from two former officials of the Village of Perils Park, including the former village clerk who took notes of a 1989 annexation proceeding in which the defendants' properties, along with a number of others, were annexed. And her unopposed testimony was that in the process of that annexation, as was true of all the other annexations that the village had conducted during about a 40-year period, all the non-conforming properties were brought in as is. And it did not matter whether they had previously been legal non-conforming uses or non-legal non-conforming uses. Once they were annexed, they were brought in and considered by the village to be appropriate legal non-conforming uses. Is there any public record of that? Other than what we've provided in the record now, both parties filed a FOIA request with the village. We received exactly the same documents, which we know because as part of the document production in the case, those were exchanged. They show the annexation, but they don't show the as-is designation. That's not a public record. Am I right on that? It is not directly referred to, but it is referenced obliquely in the notes of the meeting when Mr. Brosh, who was spearheading the annexation proceeding, brought to both the planning board and the village council's attention that there were several properties being annexed that were non-conforming. Non-conforming with the residential zoning classification. Correct. He was dealing primarily with lot size at that point, and there was some discussion in both meetings. The village clerk, who was also taking the notes, explained that the village had always just brought these properties in, and the village had gone on from there. In fact, her affidavit, a supplemental affidavit, also explains that they brought in so many of these properties over a period of time, that the village actually changed its own code to eliminate all the inquiries that the village was getting about whether or not people who had non-conforming or improved lots needed to go before the planning commission to make any changes to the improvements on the lots, and they passed an ordinance that said you don't have to do that, you can go ahead and make the changes, just because they didn't want to deal with the continuing inquiries. They made it an automatic. In any event, as I said, the evidence on what happened is unconfessed. It's from Mr. Don Jeans, who was the former mayor, and Bob Pat Jones, who was the former village clerk and then village manager. Nothing has been put into the record in opposition to that. Their depositions were not even taken. So, as a matter of law, that testimony stands unopposed and should be accepted. What then occurred as those affidavits were coming in, and those slides, I'm sorry, the appellants were moving for summary judgment on a renewed basis, an issue arose from the plaintiff as to whether or not the annexation and zoning rulings could be done in a single meeting. The only support for that that was offered was the statute that talks about somebody making an application, who is already part of the village, but is now making an application for some kind of variance or other change, a special use permit or whatever. And the statute calls for notice, public hearing, and a decision by the appropriate village bodies. However, the question as to whether or not it is proper to do a combined meeting where you have different decisions being made, annexation and zoning in the same meeting, was already answered by the Illinois Supreme Court in the Claren case, Claren v. Village of Weill. They not only approved of the procedure, they heartily endorsed it, as did the Second District when the case was remanded to it. It was deemed a much more efficient process and so on. The only concern was that due process rights be considered or kept in mind when that was done to make sure everybody had an opportunity to be heard. And that arose out of the context of a combined annexation zoning hearing in which the, I believe it was the mayor, instructed the audience that there would be limited to non-false examination. And the Supreme Court held that that was a violation of due process, not an issue in our case, that alone where they endorsed this entire process of doing a combined sort of one stop there. Well, the argument isn't so much that you can't do them combined. I think the argument or the holding of the lower court was that there was no, there's no statutory authority for what the village did if this is what the village did in this case. And it's not a home rule district and it has to act pursuant to specifically enumerated powers. So even if you could in theory do it, how is this legitimate? Because they were doing it as an annexation and so was a combined process. They were not doing it as a village resident filing a new and separate application. So everything was being reviewed at one time. That's as I understand the process, but Your Honor's question highlights one of the issues in this case, which is if we were going to go down that road as the defendants called the trial court, then the village and maybe the residents whose properties, non-conforming properties, have been annexed and approved as is should be brought in as necessary parties. Because your point is this happens all the time or happened all the time. That's what the testimony is in the affidavits precisely. What the rationale was or why the village was doing that, again, my clients do not play any role in that. That's why the village was necessary, particularly because this case, depending on what the court does with it, has the potential to unwind all these other annexations, which brings up another point in the case, which is at the time of the annexation in 1989, the plaintiff was not even a resident of the village, was not even considering becoming a resident of the village. So the question then becomes, because you brought up the issue of mortals, whether or not there have been mortals and so on, how he has been damaged by this. That had all occurred, that annexation and rezoning had all occurred about nine years before he purchased his first property and about 10 to 12 years before he moved in and built his house. So we have the standing issue. We also have the question of statutes of limitations, 65ILCS7-1-46. That's a one-year statute of limitations for challenging an annexation. After that, no one, including the state of Illinois, has authority to try to reverse an annexation. And your point is the zoning is all tied up into the annexation. It's all one process. It's all one process, precisely. Because it hasn't been changed since the annexation was effective. The zoning of my client's property? When they annexed the property, they said all property coming in to our village is going to be residential. Right. Unless changed by the city council. Is that correct? That's correct. I don't know about any properties other than my client's as to whether or not they were changed. In other words, there were multiple properties that were annexed, not just my client's. Right, but the area annexed through annexation was designated residential. Correct. R3. So presumably, every piece of property in that annexed area was zoned R3. Yes. Regardless of whether it had been zoned before. Correct. Right. And those non-conforming properties were admitted as non-conforming uses. As with my client's. Obviously, because if they were manufacturing or if they were taverns, if they were commercial, they were there as annexed at that time. Correct. With that use. Correct, and that's precisely our point. That process was proper under the Clarence case, doing it in a joint fashion. We have the testimony showing that it was a two-part process with not just one but two meetings, during which the public had a chance to participate. Is there anything in the record that indicates the area that was annexed, the size? No. There was a reference at some point to, I believe it was including 90 lots, and I think the figure was 239 residents occupying those lots. But in terms of the acreage or square mile dimensions, that I don't have. Again, that's something that presumably the village would if the village had been brought in, but it was not. In addition to the one-year statute of limitations on challenging an annexation, there's also the 90-day statute of limitations that applies for judicial review of any zoning decision. So once again, with the zoning being made, the zoning decision on these properties being made back in September, October of 1989, that 90-day period ran out sometime in December of 89, January of 90, depending on how one looks at the ratification period, because there's a delay on the full ratification of not about the 30 days. So the one remaining issue on the matter at this point that I have not yet addressed is the estoppel. The plaintiff, in theory, is standing in the shoes of the village. The village has taken the position, based on the evidence of record, that my client's had a legal, non-conforming use upon the annexation of the property. If he's standing in the shoes of the village, then he can't very well go against what the village has already done and allow my client to continue for the last 25 years to operate on the basis that his property was brought in as is and is now a legal, non-conforming use under the village ordinances. The threshold issue for any claim under the Adjoining Landowners Act is that somebody be using their property in violation of the applicable village ordinances. If the village has concluded that the operation of my client's property was, in fact, proper and not in violation of the village ordinances, then thereby there is no violation on which an adjoining landowner could bootstrap the plaintiff. Then you never get to a stop, really. That's correct. I mean, if the village didn't have the authority to do it, then the plaintiff can't be a stop. If the village did have authority to do it, you never get to a stop. That's correct. It's somewhat of a conundrum. What was the evidence that the village considered this a legal, non-conforming use? That's the testimony of Mr. Jones and Mr. James. Okay. Anything further? Nothing else, unless the court has any additional questions. Do you want to address the state or no? The state. Oh, the state? It's not necessary. I didn't bring it up because it wasn't an issue that he raised, but, yes, I think the state was appropriate given the circumstances. I think the trial court had some qualms about its ruling, otherwise it wouldn't have issued the state and had no choice in terms of monetary damages because the attorney's fees have to be issued and they can't be stayed. Very well. Thank you. Thank you. Good morning, Justices, and may it please the Court. Yes, for the plaintiff, Luigi Anacopulos. What I'm struck by in the appellate proceedings are the number of distractions and, in fact, the inside-out approach the defendants have taken to the issues. It's a simple matter. I thought it was an elegant opinion by Judge Adkins, and it's a claim under the Adjoining Landowners Act, which goes as follows. The property is zoned R1A. It was zoned that way by default. R1A does not permit a commercial excavating, snow plowing, and construction area business. The uncontested testimony, even from their own affidavits, is that the Adamses use it for a commercial excavating, snow plowing, and construction area business in violation of R1A. The Adjoining Landowners Act allows my client, a neighbor, to bring a claim to stop it. And that's what he's done, and that's what we're doing. We have no argument with the village. When the village annexed it, it did a straight annexation, and the default zoning applied, R1A. The defendants are the ones who failed to invoke any of the machinery. What obligation did they have to invoke machinery to get a zoning variance or change so that their property would be conforming to the zoning code? In this case, all of it. For a legal nonconforming, you have to be legal at the time a new zoning designation is given. And when did that new zoning designation take place? By default, at the time they were annexed to Palos Park. And the zoning annexation, as I read it, says, upon annexation, this property will be zoned R1 something. That's correct. Unless otherwise changed by the... That's the statutory process, yes. No, that's their ordinance. Right. Now, you recognize a preexisting use of a property, right, before annexation or before zoning? If it's legal. Under whose ordinance? The prior existing. In this case, the counties. Where do you have case law to that effect? Because if one municipality annexes property either from another municipality or from an unincorporated area, it matters not a whit to them what the zoning for that other area is. It's the zoning for themselves upon annexation that controls or that they care about. Correct. It doesn't matter to them what the property is zoned. The issue is for a legal nonconforming use, Judge, that you were asking about, to be granted legal nonconforming status by the village at the time of annexation. Right. It had to be legal in the existing zoning at the time, and it wasn't. The county zoning was R3. Where do you have authority for that? My problem is the village isn't concerned or shouldn't be concerned, to my knowledge, about what the zoning of the area annexed is. It's only upon annexation are they concerned about their zoning. I agree completely. Right. Now, would you agree that upon annexation, the village would have no interest in putting property owners out of business who had an existing business prior to annexation? No, I don't agree, Judge. You believe that the village, upon annexation, of a large area that contains multiple mixed uses of property, is interested in rezoning those properties out of business? The statute requires a non-home-run municipality to actually do that. There's a default zoning, and if it has to be anything else, under the statutory code, the Illinois Municipal Code, the municipality has to invoke the other machinery, which includes, prior to passing the annexation, a public hearing on the new zoning. Right. And that was R1, right? That's what their default is. It's going to come in as R1 unless the defendants invoke the machinery to ask for something else. Where does it say that the defendants must take the initiative? In the municipal code. It says that to change the zoning, you have to invoke the process. You have to have a hearing on different zoning before you can sign the annexation. If the law recognizes a pre-existing condition that can be legalized, then it also recognizes no obligation on the part of that property owner to seek a zoning change. That's not correct, Justice. That's not correct. Suggest some audits. We have. We've cited you all the statutory provisions that require this process. It's been a function of the push and pull between the court and the statutes, and a non-home-run community has to follow that statutory process. They could have asked for a new zoning map amendment, and then you have that, and it's designated something different, and then annexed in as that. But they did not. They could have had an annexation agreement in which the parties agreed to zoning. It's the only contract zoning available in Illinois. They didn't do that either. Instead, what they're relying on is cronyism, Judge. We were friends with the building commissioner. He said it's okay. So now if anybody else who comes to the village can't rely on a village ordinance, you're putting aside the rule of law. RONA doesn't mean what it says because these guys were friends with the mayor and the building commissioner, and they had a special deal. We don't know what it's actually zoned to do. That's very dramatic. You know, it sounds terrific as a soundbite, but you recognize that a municipality has the right to recognize a preexisting use. If it was legal, and it wasn't. If they said it was legal upon annexation. They can't do it that way. They don't have the power. They are a non-home rule community. They only have the power the state of Illinois has granted them, and they don't have the power to say we create as is zoning. There is no statute. There's no stated dilemma. I would agree with you more that there's no as is term in zoning. Correct. But there is a preexisting use. If it was legal and then nonconforming, that's where we have this value in case law about legal nonconforming uses. Well, at the time, and that can happen even now. If the village changed their zoning to something else, say multifamily. Right. And their use was legal at the time of the change of the zoning. Right. It gets to go on. Palos has a two-year limit on that, and that's not contested. They have a two-year limit on how long that legal nonconforming can go on. Right? But for you to invoke legal nonconforming, you had to be legal when your zoning was changed. They were never legal. If you wanted to change or continue that use upon change of ownership, if you change the zoning from single family to multifamily, all single family uses can remain forever, unless the owners of those single family uses wish to change the use. Actually, that's not correct. If the single family was there and it was changed to R3, and the single family was prohibited by R3, that's the key, that it's not an allowed use. Okay. If the house burnt down past the 50 percent mark, the case law is clear. You cannot then reestablish the use. You have to go to R3. The legal nonconforming was that when we changed your zoning, were you legal under whatever it was at the time you were changed? That is the critical inquiry I'm talking about. But that's the only reason we care that it wasn't legal under the county zoning. The municipality doesn't, but we do. You do because it helps your case. But from the city's perspective or the village's perspective, when they acquired this property, it's at that point in time that they established their zoning laws with respect to that area. And anybody who read it would read it was an R1A property, and here's an excavating company. Right. And you think that because it's an R3 or R1, whatever the subsection was, that all other existing uses were illegal? Yeah. The existing use was illegal because they did not invoke the statutory machinery required to do it. So they all were subject to being put out of business. About the other uses, there's nothing in the record to say whether they applied for and got different zoning designations for their properties. We don't know. All we're concerned about is this lot, and this lot did not invoke the statutorily required machinery. There's more people at stake than just the defendants and my client. Again, the zoning map says R1A. If you're going to bless this as-is thing because the clerk and the mayor are buddies and they say you can do it, then nobody can rely on the zoning map for anything because you've got to go dig up the old map. Well, did you have a special deal? But that's not the law. The law is the designation applies. Well, we're enforcing or you're seeking to enforce the village's zoning work. Agreed. Not Cook County's. Correct. But Cook County's is important because they cannot take advantage of the legal nonconforming argument. They weren't legal when they came in. There hadn't been a legal use at the time they were annexed for it to continue. They weren't anything with respect to the village until they were annexed. Right. And when they were annexation, that's when life begins. And there's only three ways to change it from coming in as an R1A. They signed a petition. This wasn't a forcible annexation. This isn't because they were surrounded and forced in. They agreed to come in. They signed a petition to come in. The default zoning they were going to get was R1A. If they wanted something else, the statutes are clear they had to apply for it. It had to go to the plan commission first. I don't care about the dual meeting thing. I argued clearly. That's my case. I'm not worried about the dual meeting. But you still had to publish to the world that we were going to change the zoning of the Adams lot from R1A to whatever they wanted, C2, commercial, whatever they wanted. That had to be published to the world. There had to be a public hearing on it. And the plan commission had to make a recommendation before you could even annex that property. They did none of that. That's the law. You don't have to ignore the statutes because the mayor is your pal. Or because the building commissioner says don't hire a lawyer. That's the process. They could have done that. That would have been one. They could have entered into an annexation agreement with the village, not just signed a petition. The annexation agreement would have said, we agree. We're going to change from R1A to C2 under our annexation agreement. Thank you for coming in. We'll even waive the fee. They didn't do an annexation agreement. And they never sought a variance because even if you say they were illegal nonconforming under the village code of ordinances, which we get to apply, that expired in two years from the day of annexation. They had to comply with R1 two years later and didn't have it. Don't. Aren't now. They're still not in compliance. And in that entire time, those two years are intended for you to seek a variance or a map amendment. They've never invoked any of that machinery either. My guy arrives, buys property. He's told that his neighbor is supposed to be residential. He wants his property and finds this excavating business in full operation. So he can't rely on any of the ordinances or legislative enactments of the village because these guys were pals with the mayor and the clerk. There's no doubt that this is not a farm. This is a. That's uncontested. Okay. So it's a commercial excavation business. We're not arguing clearing is not important. We're not arguing that the village somehow screwed up. They didn't take advantage of the different mechanics needed. Those three processes we outlined in our brief. I thought the purpose of the adjoining property landowners act was to give a private right of action to a joint property owner when the village refuses to enforce their zoning law. Exactly. And I thought that the evidence is that the village is enforcing their zoning laws because they considered a legal knack to forming use. No, the retired clerk cannot speak for the municipality. She gave her opinion. Part of those were stricken from her affidavit because she has no basis to speak. Only the legislation can speak for the corporate body. And the only speech of the corporate body is it's R1A. Whether they choose to prosecute or enforce a property ordinance violation, that's why we have the private action. Because there's all sorts of competing interests for every dollar available in a municipality budget for what they're going to enforce. The village has never passed an ordinance which they would do to zone this. If the village wanted to give the Adams the right to stay there, then pass a zoning ordinance under the process to zone it that way. Well, but they have the right to consider a piece of property illegal, nonconforming use. Oh, yes. Don't they have that right? For two years. Under their own ordinance. That's it. That's their code of ordinances. And it's stated in the record. So it had to expire after two. They're not allowed to ignore their own ordinance. They're not a home rule community. Okay. And that's why the stay is improper. This illegal use, which had to expire no more than two years after it was annexed, continues to go on. And having found and considered. And that's almost 30 years now. Right? Not for my guy. Well, you know, 30 years ago the property was annexed. About. Right? Yeah. As a residential piece. And then the village welcomed more people to build homes there. And now tells them, oh, you can't rely on anything we're saying? What about his argument that the annexation and the zoning change, that however unsupported it is, we're all one and you had a one-year statute of limitations to do anything about that. It's all one action by the village. That you say they didn't do correctly, but you had a year to do something about that. Because annexation is a different part of the municipal code, so it's not all one. You have only the powers given you by the legislature. Annexation and zoning are not together unless it's an annexation agreement or there's a prior map amendment approval, and all of those things are set forth in the statutes. They didn't follow that process. Right. So it's not all one, Justice McBeth. It's two separate things. We're not contesting the annexation. We're not saying it was an illegal annexation or that it wasn't available for annexation. So this one-year statute of limitations doesn't apply. We're not contesting the annexation. We're contesting a very simple thing. It's zoned R1A. It's not used within R1A. The illegal use must stop. That's the right given to us by the Adjoining Landowners Act, and none of their defenses carry any weight because they didn't comply with the very clear statutory processes for doing it. These are processes the result of push and pull, as I said, between the courts, like in Clarin, and the legislature about what the process will be. Because land use rights are so fundamental, you have to follow all of those processes, and they invoked none of them. Their property is and remains R1A. They're not supposed to use it for any other use than those permitted by R1A. And there is no contest that they're not. So what excuses that? What excuses them from doing it? That there were illegal nonconforming at the beginning? Well, the village didn't say that. There's no legislative enactment where it was actually put forth in the record that that's it. But even if you want to consider it that, under the very code of ordinances under which there were annexed, the village said your legal nonconforming expires in two years. You can't have it both ways. If the village is going to say you can come in and this is it and we'll consider you legal nonconforming, well, under your own code it expired two years after you were in, although they're not all one. That's not the law. The municipal code and the cases are very clear. I would refer you to the Dunlop case, which goes through all of this about why you can't sue the village. And then it refers all the rights and remedies available to the neighbor when the use is being used illegally. Your client is stepping in the shoes of the municipality in bringing this action, correct? Correct, to enforce the zoning code, yes, sir. How does estoppel apply in this case, if at all? Based upon what they alleged, they were presented with representation by the villages that it was as is. That being true, why wouldn't the village be estopped and accordingly your client in place of the village be estopped? It's the usual estoppel analysis, Judge. So what was the affirmative act of the village? None. The village acts by an affirmative ordinance or legislative act. But in this case, we have a building commissioner saying to them, come in as is. The case law is replete for municipalities and estoppels. What else is a citizen to do? They inquire of municipal authority and that authority says, no, you're here as is. The authority didn't. A building commissioner did. He's exceeding his authority to say that. And the case law is replete in the municipal context that a single officer, not even the mayor, can bind a municipality. Everybody is on notice that only by the official legislative acts of the corporate body can you bind it. Otherwise, we'd have, as I know that Justice Pierce calls it dramatic, but you have the cronyism. If you're a friend of the mayor, the mayor goes, oh, I told him, it's okay. It doesn't matter what laws we passed or ordinances were or what the zoning map says. It's enough that I said, okay. So we begin with what's the affirmative act in estoppel? There isn't one. There's an ultravirus act maybe by a building commissioner. Then where's the justifiable reliance? As Judge Atkins said, you can't rely on just one employee's representations. That's not allowed. This Court's been very clear consistently about not even allowing building permits to estop the city of Chicago. That wasn't enough to estop somebody. And they went ahead and built because the authority matters. So there's no justifiable reliance. And then the third element of estoppel is what's the change in position? There was none here. They were going to come in anyway. They wanted to. They didn't change position because of it. This was a voluntary act on their part. If this was a forcible annexation, it might be different. But it's not. It was a voluntary act. They just chose not to do what was required to do if they wanted to keep the legal use. And so now when you say what's a citizen to do, what's my citizen supposed to do? He goes, decides to buy what lane he's going to build his house on. He's told that around him is all going to be residential. But now we're going to say to the world, oh, that doesn't really mean it. Well, he could see what use was being made. It's not like your client wasn't aware of this. So the due diligence doesn't include the actual legal pronouncements now? It's only eyeballs? Well, I'm just saying your client had noticed what was around him when you built. Yes. Yes. But he also knew what the zone was supposed to be as the official legislative enactment. Maybe. At some point he figured that out. He came to you and you figured it out. My guess. But whatever. Well, and why is that? Because his quality of life is impacted and that's what zoning is intended to protect. That's why they do it. And that's why there's so many rigorous standards about how it's done. Anything further? No, Justice. Thank you. Mr. Rose, brief rebuttal? Just to clarify a couple of points. The two-year limitation in the Bill of Relevance applies when there is not a building involved. Obviously this was an approved property. The building has been on there since the mid-'50s where equipment and vehicles are stored and repaired. So the two-year statute of limitations on that would not apply in this case. In addition to which, there is no evidence of cronyism at all in this record. That's an inference that counsel wants to draw from basically nothing that's up to him. But there is nothing showing any kind of sweetheart deals in this record. In fact, as we were discussing a minute ago, the record actually reflects that multiple nonconforming properties were annexed just in the 1989 annexation. And on the record, Ms. Jones, then the village clerk, that in fact identifies two other subdivisions that had nonconforming lots that were brought in, as is in her affidavit states that when the village did that, they did not issue separate variances. That's why there's nothing else on the record. When I was asking her questions to prepare the affidavit, I specifically asked that, and she said, no, we didn't do that. And that's, in fact, when she brought up the fact that the village had amended its code so that they didn't even have to get inquiries about having to go before the plan commission if they wanted to change the improvements on a nonconforming lot. And Justice McGill, you're correct. The record reflects in the deposition testimony of my client and Tom Adams that the plaintiff actually asked my clients to come over and do the excavation and the backfilling on the foundation of his house, which was not a new construction. Well, that house was a new construction, but it was a teardown. There was a house previously there, which is what he bought, and then a few years later he tore it down and put up a new house with the assistance of my clients. And my recollection is the plaintiff stated on the record in his deposition in a portion that is in our summary judgment materials that he observed my clients coming over from their property with their equipment to do the excavation and the backfilling on his house. He didn't bother to file suit for about another six years after that. Clearly by the time he had filed suit in 2011, he was fully aware of what was going on next door and what had been going on for 50 years, so that was not a new development. Counsel stated that he's not worried about the double hearing. That's the main point that they kept arguing both in the trial court and in their briefs before this court. That's why we were talking about clearing at some length in our brief. I'm not sure how that shifted. But in terms of escapo, the village apparently believed that it was doing a double hearing at the time and was conducting both an annexation and a rezoning of nonconforming properties. That's, again, the uncontested testimony of Ms. Jones, and my clients subsequently relied on that for the next, well, now it's almost 30 years. As Your Honor pointed out, that should have stopped the village from taking any action and therefore have also stopped the plaintiff. The court has any additional questions? Otherwise, no. Very well, thank you. Thank you. We'd like to thank the attorneys for their fine work on debriefing this interesting subject. We'll take the matter under review.